Good morning, Your Honors, and may it please the Court, my name is Mark Hubert and I represent Mr. Varner. I'd like to start by calling the Court's attention to the Supplemental Authorities Letter I handed to the Clerk this morning. It attaches a published 2007 opinion by Judge Patel here in the Northern District that applies Biggs and Irons in exactly the way that I argued in my supplemental brief that it should be applied. In that case, Judge Patel granted habeas relief to a prisoner remarkably like Mr. Varner who was denied parole based primarily on the commitment offense after his minimum term had been served. And this is my response to the two unpublished cases in the government's, or excuse me, the State's supplemental brief which I'll get to in a minute. Next, since I think that the main issues have been briefed adequately, I'll spend a few minutes replying to the cases in the State's supplemental brief that was filed last week and leave the rest of my time for questions and rebuttal. In its supplemental brief, the State continues to argue that the sum evidence standard is not supported by clearly established Supreme Court authority. But there are three very recent Ninth Circuit cases, Sass, Biggs, and McQuillian, all of which held that the sum evidence standard did apply because of and citing to controlling Supreme Court authority, which is Superintendent v. Hill. Those same three cases, along with Irons, also explicitly found clearly established Supreme Court precedent, and that's Greenholtz and Hill, excuse me, Greenholtz and, I'm sorry, Greenholtz and one other case that established a federally protected constitutional liberty interest in parole. Kennedy. Enlighten me. Biggs v. Terhune was the Ninth Circuit court case. Yes, correct. Irons v. Carey was the Ninth Circuit court case. That's correct. The sum evidence standard was enunciated in the Hill case, which was a Supreme Court case. Right. Now, I don't think anybody is saying that we shouldn't follow sum evidence standard under Hill, but the question is what is the evidence that we should look at as sum evidence? Is are the immutable facts of what this man did in his murder 19 years ago the evidence we look at? Do we look at his criminal history, which is set in stone, or do we look at the last 15 years that he's been in jail? Now, what Supreme Court case do you cite that clearly states that we cannot look at the immutable characteristics of the crime and we must look at the recent evidence of his development? First of all, I'm not arguing that you cannot look at the crime itself. All right. What I'm arguing is that under Biggs and Iron and the supplemental authority that I just submitted, that over time, those immutable characteristics become less and less important and less and less predictive of the issue that the parole board has to decide, which is current dangerousness, if he's released today. Now, the you're correct. And what's your best evidence on that? I'm sorry? What's your best case on that? The record is full of evidence that Mr. Varner has been more than a model prisoner for 21 years. I mean, what's the best case, not necessarily what his record is. Oh. Legal authority. I'm sorry. The you the I was starting to respond that Judge Bey is correct that the legal authority that sets forth this this rationale comes from a Ninth Circuit case, which is Biggs. However, Biggs cites four U.S. Supreme Court cases in establishing this rationale. Those are Morrissey v. Brewer, Greenholtz, Lankford v. Ohio, and joint antifascist refugee committee v. McGrath. That's an old one. Yes, it is. It is this Court's interpretation of what Supreme Court law requires in this context, which is at a minimum persuasive. And more importantly, this Court just a month ago in the Irons case reaffirmed that that's the law of this circuit. So my argument would be that, yes, it is grounded in Supreme Court precedent that is cited in Biggs, and that regardless of that, or in addition to that, I guess I should say, Irons establishes that this is the law of the circuit that must be followed. But Irons allowed the evidence of what happened in the crime to be considered, right? I'm not saying that it can't be considered. I'm saying that it over time, its predictive value becomes less and less and at some point approaches zero. And that's what happened in the supplemental case that I submitted today, and I would submit that that's the case here. But is there a Ninth Circuit case where, in fact, a writ was issued under those circumstances? Not that I'm aware of. Just picked them in the Irons case. But the Irons case says that it expressly limits Biggs, Sass and Irons itself to cases in which the minimum term has not yet been served. And it suggests that maybe in the future it could. That's right. But it did not say it would. It did not decide in Mr. Irons' case that that was appropriate for him. In those cases, the minimum term had not been served. That's all correct. Here it has. It's been much more than served. I think his ---- And then you have to ask yourself why, why was this sentence imposed that kept open the, you know, the possibility of parole? That's right. I mean, the legislature has not said that second-degree murderers are being imprisoned for life without parole. It's established a parole system, which I believe the evidence is that something like one out of 4,800 cases has resulted in parole for people in this category. And, effectively, there is no parole for second-degree murderers right now. We're sort of plowing new ground, are we not, on the issue of should we have a different rule under Hill where a minimum has been served and when a minimum has not been served? I think it's an issue that has been set up by this Court in Irons, and it's ready to be decided what case, what case has facts which fit within that category, yes. Okay. I'm going to run out of time, so I just want to go and correct one kind of recurring factual error, I would say, in the State's brief. The parole board did not consider Mr. Varner's disciplinary violations in prison as a reason. I don't think there's any question about that. Okay. They did not. They did not. In fact, it complimented him for being. Yeah, they thought it was an example. I mean, he'd been written of four times. He'd done a stabbing, but that was so far ago. That's right. That they didn't pay any attention to it. That's right. They didn't zero in on that.  That's right. They're not spending time on that one. That's right. And I'll just add before I sit down or answer other questions, is that the State last week in the supplemental brief cited two unpublished cases that it says show other panels have prohibited parole denials based on the crime after serving a minimum term. I would just point out, in addition to being unpublished and not precedent, in addition to the published case that I just submitted saying the opposite, and this would be a good case to opportunity to end the confusion, that neither one of those cases directly addressed the issue of whether the service of a minimum term changes the calculation in any way. Neither one of them addressed it. Has the Supreme Court ever said that a writ must issue when a person has served out his minimum time on parole? No. And I'm not sure that I'm saying a writ must issue once a minimum term has been served. There could be many reasons for denial of parole, including disciplinary infractions in prison, not having the excuse. But they also haven't said, with everything else being perfect, that a writ must issue in a case like this. No. But Biggs has interpreted Supreme Court law, the four cases they cited, as saying that once the minimum term has been served, the predictive value goes pretty close to zero, and if you continue to focus in solely on the commitment offense, that that would raise a due process issue. So I would rely on that as this Circuit's – the law of this Circuit and this Circuit's interpretation of Supreme Court precedent. Well, you said that – you said that to the effect that it's – maybe I misunderstood you, that historically, in a second-degree murder case, very few instances were paroles been granted? At least under Governors Davis and Wilson, that seems to be correct, yes. Two percent? I think it was less than that, but I – if you have that directly in your mind, I'll defer to that. Okay. I'd like to say – I know there was – I know there was a time when, oh, back in the 60s and the 50s, where there were many times when parole was granted, second-degree murder. It seems to be – Many times after about, oh, I don't know, five or six years. Mm-hmm. Any statistics on that? Nothing other than what I've cited in my brief. And, of course, the 200 declarations that Mr. Varner submitted to the district court, which at a minimum I think should have gotten him an evidentiary hearing. You know, the longer you stand up there, the more you look like Judge Reinhart. Thank you, Your Honor. Whether that bodes well or ill, I don't know. Thank you, Your Honor. May it please the Court, I'm Deputy Attorney General Scott Mather, counsel for Calvino State. I'd like to begin by – Can I ask you a question? Did Jerry Brown look at this case? I'm not aware. You know who he is. I'm not specifically – You know who he is. Yes. Okay. No, I haven't had any contact with him on this case. Well, when you see him, give my best regards. Well, he does call us from time to time, so he gives more of an active participant. Yeah. In Superintendent Hill, counsel is correct. The U.S. Supreme Court did address the sum evidence standard in the context of a prison disciplinary case. But since then, in the last two years, both the Supreme Court and in two other or three other cases cited by this circuit, the courts have made clear that the fact that there is clearly established law in one context, even if closely – even if closely analogous, is not enough to establish clearly established Supreme Court law for DEPA purposes. And I draw the Court's attention of the cases cited in the 28J letter submitted by Appellee and the supplemental briefs to both Sherrera v. Landrigan, the U.S. Supreme Court, and the 9th Circuit case. For instance, in Wynn – So was Landrigan v. Sherrera. Landrigan v. Sherrera? Yes. I seem to remember writing a dissent in Bank Proceedings. Well, and the Court reached that not just in that case as well, but in Kerry v. Ms. Lawden and in the 9th Circuit's three cases, most recently in the Crater v. Galazzi case. And one of the ones that's most telling is the Wynn v. Garcia case, because in that case there was closely analogous Supreme Court law. The 9th Circuit was looking at criminal trials and evidence of mental competency. And they noted that in Wynn – Wright v. Greenfield, the Court had in fact addressed the standards for mental competency during the evidentiary portion of the criminal trial. And the issue with that case was mental competency in the preliminary hearings, whether the defendant was mentally competent to even stand trial. So there was closely established issues in that case, mental competency at a criminal trial, but this Court held that because Wynn – Wright v. Greenfield had not yet been applied to the preliminary determination before trial, it could not establish clearly – it could not constitute clearly established Supreme Court authority. The same would be true in this case. Both these cases, both Superintendent v. Hill and this case are in a prison context. However, Superintendent Hill dealt with a disciplinary hearing, a retrospective analysis of whether an inmate has committed a specific violation. Whereas, even if somewhat analogous, the parole context is different. There the Board looks prospectively. It doesn't apply a rigid framework that is, yes, the inmate is suitable or no, he isn't suitable, but rather, as the Greenholds Court said, the Board undertakes a subjective analysis. There may be objective and subjective elements, but it's fundamentally different than a determination as to whether an inmate has committed a disciplinary violation. And thus, in Greenholds, the Court even indicated, and as indicated in our supplemental briefing, that some of the same procedural protections that were present in disciplinary hearings, like the right to call witnesses, the right – the requirement that the decisionmaker actually specify the particular evidence, the source of evidence being relied upon, is not present in parole hearings. And thus, they do have a different penalty and a different outcome, which is what this Court had focused on in Wynn v. Garcia. It refers specifically to 477F3rd at page 724, when the Court indicated that part of its basis for reaching the decision that it did in that case was that there were different penalties at issue. Similarly, this is not just based on Ninth Circuit panel decisions, but Supreme Court cases, beginning with Kerry v. Ms. Lawton. And there, the Court noted that if a matter is an open question before the Supreme Court, in other words, so far there's only been possible Supreme Court dicta or persuasive circuit court authority establishing a standard, that is still insufficient for purposes of ADEPA to constitute clearly established law. Did this Court, in one of the cases like the Irons case, say that it was clearly established, and what did it say about that? The Court did, in Irons, refer to the sum of its standards as clearly established law under Superintendent v. Hill. Well, can we just bypass that, or do we have to follow that case? Well, three, Your Honor, a three-judge panel can depart from prior decisions of other three-judge panels if there's intervening law. And at that point, ADEPA had not been interpreted in the way that Appelli is now suggesting. The Ninth Circuit subsequent decisions have interpreted that way, that it has to be the same factual circumstances. Maybe not the same facts, but at least the same factual circumstances. In answer to Judge Silas' question, let me see if I understand you correctly. Are you, for the State of California, conceding that Irons v. Carey, a Ninth Circuit court case, correctly found that it was clearly established law that the immutable characteristics of the commitment crime could not be considered in determining under the Hill test whether there was, quote, some evidence sufficient to deny the writ of habeas corpus? No, Your Honor. I didn't think so. No. And in Irons, to focus on the Court's inquiry there and counsel's comments. What are you conceding? I don't believe I'm conceding anything at this point. I'm asking the Court to consider the fact that in light of the subsequent decisions by the Supreme Court in the Ninth Circuit, that there is no clearly established Supreme Court law applying to some evidence standard. Subsequent to what? Irons gave you a? Subsequent to, well, Irons was reissued, but based on the original Irons decision. And Irons itself, for that purpose, cited to Biggs, because that was the Court's decision in Biggs when it first addressed parole, citing the clearly established Supreme Court authority in Superintendent v. Hill. Your position that Hill, which enunciates the clearly some evidence rule, does not apply to a review of the parole decision at all? Correct, Your Honor. So therefore, what rule is there? There is not currently an evidentiary standard of review that's applicable. And in fact, the Supreme Court did actually consider that question in Greenholz when it established the procedural protections. It actually considered and rejected that any evidentiary standard was required to satisfy due process, and that's at 442 U.S., pages 15 and 16. And in that case, the Court specifically laid out that the procedural safeguards in that case, the opportunity to be heard and the statement of a decision, the statement of reasons why an inmate was found unsuitable for parole was sufficient, but the Court rejected the argument in that case that an evidentiary standard of review was, in fact, required to satisfy due process. So your position is, since the Supreme Court has not stated any evidentiary standard which the habeas court can use to review the State's determination, we simply have no jurisdiction to issue the red. Federal courts have no jurisdiction. And bar impossible one exception, there is still a fundamental substantive due process right that completes, that prevents completely arbitrary decisions. So if the denied inmate's parole based on the day of the week or the color of his shirt, that wouldn't require an evidentiary review of the substance of their decision. It would simply be on its face a decision that couldn't hold even a minimum. We have, you know, we have this language in Irons that states, we hope that the board will come to recognize that in some cases indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty, interest, and parole that flows from the relevant California statutes. And in Irons, the Court seems to be limiting its decision on the extent to which the inmate's commitment offense violates due process. And in those cases where prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms, and that's not the case. He went before the Parole Board in 03? Yes.  I believe so, Your Honor. I don't believe he issued a – I don't have a recent parole decision in front of me, but I would anticipate that he would have gone back before. I'm just not sure. I know he's still in custody. I'm not sure if it – Yeah. You don't really know. From the transcript, if he was given a three-year denial, if it was a one-year denial, I don't recall that specific fact. But I would like to note that in Irons, and that's part of the issue, as the Justices were discussing with opposing counsel, is that there isn't currently established Supreme Court law yet. There's this flexible standard that the district courts and the Ninth Circuit is struggling with. And it's not clearly established in the Supreme Court. And moreover, in the Ninth Circuit, in the cases cited in the – our supplemental brief, there have been at least two panel decisions in which the inmate had exceeded his minimum term. In fact, in one case, it was his tenth parole hearing. The inmate had served over 20 years in prison. That was Kumfler v. Munz. And in that case, the Court still upheld the Board's – the Governor's decision in that case to deny parole based on the circumstances of a second-degree murder offense. Those are in the supplemental brief? Those are in the supplemental brief at pages 5 and 6, Kumfler v. Munz and Culverson v. Davidson. And those are both 2007 decisions from this Court. So for those reasons, Your Honor, Appellee would ask that this Court affirm the district court's decision denying relief. Thank you. Roberts. Thank you, Your Honor. I just wanted to say, first of all, that the State is feeding a very dead horse on some other standard. In Irons, which was decided a month ago, this Court said that the Supreme – at the time of Irons' habeas petition, the Supreme Court had clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by some evidence in the records, citing Sass and Superintendent v. Hill. We have not one but four Ninth Circuit cases in the last, I think, four years, which have all said that Superintendent v. Hill is clearly established Supreme Court's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by some evidence in the records, citing Sass and Superintendent v. Hill. We have not one but four Ninth Circuit cases in the last, I think, four years,  which have all said that Superintendent v. Hill is clearly established Supreme Court's  decision is not supported by some evidence in the records, citing Sass and Superintendent
judges: Pregerson, Siler , Bea